IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM JOSEPH BROWN, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-CV-0171 |
| | : | |
| D. GARNETTE, *et al.*, | : | |
|     Defendants. | : | |

<u>MEMORANDUM</u>

Marston, J.                                                                                                                                                                       June 27, 2023

       In April 2022, *pro se* Plaintiff Adam Joseph Brown was incarcerated at SCI Phoenix. (*See* Doc. No. 2 at ¶ 8.) He sues four SCI Phoenix employees—Defendants Correctional Officer D. Garnette, Corrections Health Care Administrator B. Huner, Rosemarie Joseph, R.N., and Captain Young—in their individual capacities. (*Id.* at ¶¶ 4–7.)[1] Defendants move to dismiss Brown's Complaint. (Doc. No. 15.) For the reasons discussed below, that motion is granted in part and denied in part.

**I.     BACKGROUND**

       Brown alleges that on April 13, 2022, he was placed in a psychiatric observation cell for constant observation due to "self-injurious behavior." (*Id.* at ¶ 8.) Officer Garnette, who was assigned to watch Brown, gave him a razor while he was in the cell and told Brown that he should kill himself. (*Id.* at ¶¶ 9–10.) According to Brown, Garnette did so in retaliation for having reported Garnette's coworker for sexual assault. (*Id.* at ¶ 10.) Brown alleges that he "used the razor to cut his testicles open causing massive blood loss." (*Id.* at ¶ 11.) Despite his

---

[1] Brown also asserted official capacity claims against each Defendant. (Doc. No. 1 at ¶¶ 4–7.) However, on February 7, 2023, the Court dismissed with prejudice Brown's official capacity claims. (Doc. No. 7 at ¶ 5 (screening his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)).) To the extent Defendants move to dismiss these already dismissed claims (*see* Doc. No. 15 at 1 ¶ 1), their motion is denied as moot.

serious injuries and claims that he was trying to kill himself, no Defendant tried to stop Brown or offered him help.  To the contrary, when each Defendant walked up to Brown's cell and saw that he was cutting himself, they actively encouraged his suicide attempt.  (*Id.* at ¶ 12 (Huner telling Brown, "Good luck" and "I hope you succeed"); *id.* at ¶ 13 (Joseph responding, "I don't care" and "I'll come back when your [sic] dead"); *id.* at ¶ 14 (Young telling Brown to "keep at it"); *id.* at ¶ 15 (alleging that Garnette "documented Brown's actions all while encouraging him to kill himself").)

Brown contends that Defendants' actions were retaliatory in violation of the First Amendment and constituted "blatant disregard, deliberate indifference, harmful error . . . and failure to protect" in violation of the Eighth Amendment.  (*Id.* at ¶ 23.)  Defendants move to dismiss Brown's First Amendment claims against all Defendants and his Eighth Amendment claims against Defendants Huner, Joseph, and Young.  (Doc. No. 15.)  Brown opposes that motion.  (Doc. No. 19.)

## II.    LEGAL STANDARD

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  Because Brown is proceeding *pro se*, the Court

liberally construes the allegations in his Complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

Brown brings claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Brown alleges violations of his First and Eighth Amendment rights. (Doc. No. 2.) Defendants argue that, with one exception, Brown has failed to state a claim for violation of his rights under either Amendment. (Doc. No. 15.)[2] The Court addresses Defendants' challenge to Brown's First Amendment claims before turning to his Eighth Amendment claims.

### A. First Amendment

First, Defendants argue that Brown has failed to assert a First Amendment retaliation claim as against any of them. (Doc. No. 15 at 9–10.) "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected activity, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct

---

[2] Defendants do not challenge Brown's Eighth Amendment claim against Garnette. (Doc. No. 15 at 11 n.3.)

3

was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

  As to the first element, Defendants seem to concede that a prisoner engages in a protected activity under the First Amendment when he reports a prison guard for sexual assault. *See Cunningham v. Stamm*, No. 1:20-cv-854, 2023 WL 1818359, at *5 (M.D. Pa. Feb. 8, 2023) ("Here, Cunningham has sufficiently established the first two elements of his retaliation claim. First, he engaged in protected conduct when he filed a [Prison Rape Elimination Act] complaint."); *Singleton v. Shearer*, No. 1:17-cv-1027, 2019 WL 3337060, at *5 (M.D. Pa. July 25, 2019) ("The filing of a [Prison Rape Elimination Act] complaint against a corrections officer is an activity protected by the First Amendment."). Defendants nevertheless take issue with Brown's Complaint, arguing that he has "provided no information concerning his alleged report of sexual assault." (Doc. No. 15 at 9.) Given the liberal standard with which the Court must read *pro se* pleadings, we find Brown's allegation that he reported a correctional officer for sexual assault sufficient at this stage; however, if Brown chooses to file an amended complaint, he is encouraged to provide additional details about his report.[3]

  Next, Defendants argue that Brown has failed to allege that any of them took an adverse action against him. (Doc. No. 15 at 9.) An adverse action is one that is sufficient to deter a person of ordinary fitness from exercising their rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Defendants argue that Brown cannot satisfy this standard because "verbal threats alone do not constitute adverse action for the purposes of establishing a prima facie retaliation claim." (*Id.* (quoting *Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013)). Here, Brown's allegations go well beyond "verbal threats"—Defendant Gazette handed a razor to a

---

[3] For example, it would be helpful to know the subject of Brown's complaint, to whom it was made, and when it was made.

prisoner who was in a psychiatric observation cell, and all Defendants encouraged Brown to kill himself and refused to intercede when he tried to do so. *Cf. Hammonds v. Collins*, Civil No.: 12-CV-00236, 2016 WL 1621986, at *6 (M.D. Pa. Apr. 20, 2016) (discussing the difference between mere name calling by prison officials, i.e., referring the plaintiff as a "snitch," and prison officials encouraging other prisoners to harm the plaintiff, i.e., telling other prisoners to "take action against the snitch"). A reasonable person of ordinary fitness might be deterred from exercising their First Amendment rights if they knew that they would be denied necessary medical treatment as a result. *See Hagan v. Dolphin*, Civil No. 1:13-CV-2731, 2014 WL 5242377, at *7 (M.D. Pa. Oct. 15, 2014) (finding that the plaintiff stated a claim for first amendment retaliation against defendant prison officials who "deprive[d] him of medical care and treatment," by denying the plaintiff access to medication for a psychotic disorder and removing him from the active mental health roster, in retaliation for filing grievances and litigation against prison staff).

Finally, for the third element, causation, a plaintiff must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* at *6 (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Defendants argue that Brown's claims fail because he has not alleged facts tending to show that any Defendant acted, or failed to act, because Brown reported their coworker for sexual assault. (Doc. No. 15 at 10.) The Court agrees. Brown's only allegation about retaliation is the conclusory statement that "[a]t roughly 7:30ish am CO Garrette gave Brown a razor and told him to kill himself for reporting his co-worker for sexual assault." (Doc. No. 2 at ¶ 10.) This is insufficient. *See Monroe v. DiGuglielmo*, Civil Action No. 10–3798, 2014 WL 348589, at *6 (E.D. Pa. Jan. 30, 2014) ("Plaintiff only makes the conclusory allegation that 'Dohman ordered the destruction of

the materials in retaliation for a lawsuit filed by Plaintiff, Dickerson, and Stover against Capt. Dohman and other corrections officers at SCI Graterford.'  His allegations lack the requisite 'suggestive temporal proximity.'  Likewise, plaintiff's allegations with respect to this single incident involving Dohman are not sufficient to show that Dohman engaged in a pattern of antagonism. . . .  Nor has plaintiff alleged any other facts that would support a finding that Dohman was substantially motivated to make the alleged order that the other corrections officers destroy the materials in Dickerson and Stover's cell because of plaintiff's 2005 lawsuit.  Accordingly, I will dismiss plaintiff's retaliation claim against Dohman." (citations omitted)).  Indeed, Brown acknowledges that he has not alleged facts tending to show either temporal proximity or a pattern of antagonism, asserting that he "would like the Court to consider the 'comments' made by each Defendant, which would be better explained if Plaintiff had the opprotuntiy [sic] to amend his original complaint."  (Doc. No. 19 at 5.)

Because Brown has not sufficiently alleged facts to support an inference of causation, the motion to dismiss is granted as to Brown's First Amendment retaliation claims.  Brown will, however, be given the opportunity to amend his Complaint to include additional facts to support his First Amendment claim.

      B.      **Eighth Amendment**

Next, Defendants move to dismiss the Eighth Amendment claims against all Defendants except for Officer Garnette.  (Doc. No. 15 at 10–11.)

"Recognizing that 'an inmate must rely on prison authorities to treat his or her medical needs, and that if the authorities fail to do so, those needs will not be met,'" the Supreme Court has "concluded that 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'"  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)) (alterations adopted). This standard is "two-pronged," requiring both that the prisoner's medical needs be serious and that the prison officials have acted with deliberate indifference. *Id.* "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Green v. Coleman*, 575 F. App'x 44, 47 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)). And a prison official acts with deliberate indifference to that need when they "recklessly disregard a substantial risk of serious harm." *Id.* (quoting *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009)). In prison-suicide cases, the plaintiff satisfies this standard when they allege: "(1) the [plaintiff] had a particular vulnerability to suicide, (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers acted with reckless indifference to the [plaintiff's] particular vulnerability." *Colburn*, 946 F.2d at 1023 (quotation marks omitted). "[T]he requirement of reckless or deliberate indifference implies that there must be a strong likelihood, rather than a mere possibility that self-inflicted harm will occur." *Id.* (quotation marks omitted).

Here, Defendants seem to concede that Brown's allegation as to Officer Garnette—the officer who handed Brown the razor—satisfy the three *Colburn* prongs. (Doc. No. 15 at 11 n.3.) *See Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988) ("Obviously when it is averred that the individual officers themselves have taken affirmative action directly leading to the prisoner's suicide, a civil rights claim has been properly pled."); *Baez v. Froehlich*, Case No. 1:20-cv-0148 (Erie), 2021 WL 4341191, at *6 (W.D. Pa. Sept. 23, 2021) ("Here, Baez has alleged enough facts to state a claim. First, he states that he was on a 'razor restriction' and that signage indicating this limitation was placed on his cell door. And second, a sign on his cell door certainly imparts knowledge of that vulnerability to Defendant Froehlich, who worked in

the RHU where Baez was housed.  Providing Baez with razors then—and encouraging him to use them to harm or kill himself—sufficiently suggests a reckless disregard for Baez's particular vulnerability." (citations omitted)).  They argue, however, that Brown has not stated a claim as to the other three Defendants because they did nothing more than taunt or threaten Brown, and "words alone cannot establish an Eighth Amendment claim." (Doc. No. 15 at 10 (quoting *Reico v. Moran*, 633 F. App'x 76, 79 (3d Cir. 2015)).)  This misunderstands Brown's allegations.  As the Court explained in the previous section, Brown does not simply allege that Defendants threatened him.  Instead, he alleges that he was placed in a psychiatric observation cell for self-injurious behavior; that Huner, Joseph, and Young, each saw him in that cell; that Brown told each Defendant that he was trying to kill himself and wanted to die, while showing them that he was "actively cutting" himself; and that in response, Defendants encouraged Brown to continue and walked away, ignoring Brown's active suicide attempt and need for immediate medical care. (Doc. No. 2 at ¶¶ 11–14.)

These allegations state a plausible Eighth Amendment claim against each Defendant under the *Colburn* framework.[4]  *See Freedman*, 853 F.2d at 1115 ("When facts have been pled which, if proven, would demonstrate that the prison officials actually knew of the suicidal tendencies of a particular prisoner, and ignored their responsibility to take reasonable precautions, the complaint has survived dismissal."); *Mullin v. Balicki*, Civil Action No. 11-247 (FLW) (LHG), 2019 WL 2315044, at *6 (D.N.J. May 31, 2019) ("[T]here is again no doubt that Plaintiff has alleged that Officer Russo acted with deliberate indifference to the risk of Robert's

---

[4] Defendants also argue that, with the exception of Officer Garnette, they are being tagged on the basis of supervisory liability alone. (Doc. No. 15 at 11.)  Again, this reading of the Complaint is tenuous at best.  The Complaint clearly alleges that each Defendant encouraged Brown and refused to intervene in an active suicide attempt by a prisoner who had been placed in an observation cell for self-injurious behavior. (*See* Doc. No. 2 at ¶¶ 11–14.)

vulnerability to suicide: Robert told Officer Russo that he wanted to kill himself, but Officer Russo ignored and humiliated him, and even encouraged Robert to 'go ahead and hang yourself.' As for the remaining Officer Defendants . . . Plaintiff alleges that Robert positively answered medical intake questions indicating suicidality, and, otherwise, outwardly expressed his suicidal intentions. Despite this, Officer Defendants allegedly failed to adequately monitor Plaintiff, and even permitted him to have bed sheets, the tools that Robert ultimately used to end his own life. These allegations are sufficient to survive a motion to dismiss."); *cf. Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, (5th Cir. 1986) (finding under equivalent test for pretrial detainees alleging Fourteenth Amendment violations that "just as a failure to act to save a detainee from suffering from gangrene might violate the duty to provide reasonable medical care absent an intervening legitimate government objective, failure to take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation").

Defendants' motion to dismiss is denied as to Brown's Eighth Amendment claims.

## IV.     CONCLUSION

The motion to dismiss is granted in part and denied in part. Brown will be given an opportunity to amend his First Amendment claims to address the issues identified by the Court in this Memorandum. An appropriate order follows.